# EXHIBIT A

Pease & Ijadi, APC
Bryan W. Pease (SBN 239139)
3960 W. Point Loma Blvd., Suite H-2562
San Diego, CA 92110
Ph. (619) 723-0369
Email: bryan@peaselaw.org

Attorney for Plaintiffs

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

1/29/2025 10:24:15 AM

Clerk of the Superior Court
By F. Gonzalez      ,Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN DIEGO

25CU005169C

| | |
|---|---|
| STEVEN HUBBARD and AMY BAACK,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, MAYOR TODD GLORIA, and DOES 1-10,<br><br>Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** |

Plaintiffs Steven Hubbard and Amy Baack, on behalf of themselves and the general public, allege as follows against Defendants CITY OF SAN DIEGO; MAYOR TODD GLORIA; and DOES 1-10:

### INTRODUCTION

1.     Last year, the San Diego City Council passed an ordinance to address the issue of sidewalk vending. Without any warning or notice to the public or even to councilmembers, buried within the ordinance was a ban on the teaching of yoga in City parks, even if no fee is charged.

2.     Although couched in language about requiring a permit, in practice the City through the Mayor's office does not allow any permits to be issued for teaching yoga at shoreline parks or beaches, despite permits being offered for comparable activities.

1

COMPLAINT

3. Plaintiffs are yoga instructors who have taught free and optional donation-based yoga classes in City parks for many years.

4. Amy Baack stopped teaching these outdoor classes in May 2024 as a result of being threatened by park rangers with citations, and ultimately decided to move out of San Diego in part due to this infringement on her civil liberties.

5. Steven Hubbard has stopped teaching outdoor classes due to being issued such citations and instead now streams them live on YouTube from his home, which anyone anywhere in the world can view for free. Some students choose to show up at the same time and place as they always have in a City park to follow along. Yet, City park rangers have continued issuing citations to Hubbard, now for teaching yoga on YouTube from his home, because it may be viewed in a City park.

6. Hubbard's outdoor class in particular has been an institution in San Diego for nearly two decades, and in 2017 he received a special commendation from then councilmember Barbara Bry's office on the 10-year anniversary of teaching these classes. The commendation stated these classes "bring people together from all across San Diego and inspire them to explore personal development and mindfulness through yoga," as seen below:



COMPLAINT

7.     Both the classes that were taught by Hubbard in Pacific Beach and Baack and others at Sunset Cliffs in Ocean Beach are still featured on the San Diego Tourism Authority's website, SanDiego.org, as recommended activities, along with a photo of a Sunset Cliffs class taking place, as seen in the below screenshot taken of https://www.sandiego.org/explore/things-to-do/sports/yoga.aspx on January 29, 2025:



## WATERFRONT YOGA

### HOTEL DEL CORONADO

Yoga practitioners find their inner Zen on the glittering sands of Coronado Beach with the Hotel del Coronado's Sunrise Yoga, held 10 - 11 a.m., Fridays – Sundays. Guests can practice downward dogs on the sand of one of the nation's top beaches with fresh sea breezes and lapping waves as a soundtrack.

### SUNSET CLIFFS

Sunset Cliffs Yoga is held on scenic Sunset Cliffs, 3:30 – 4:30 p.m., Mondays and Tuesdays. Yoga lovers enjoy the calming rhythm and beautiful views of the Pacific while finding inner peace during this free Vinyasa Yoga class for all levels.

### PACIFIC BEACH

Locals and visitors head over to the grassy lawn of Palisades Park overlooking the ocean in Pacific Beach for an all-level yoga class with Namasteve that leaves them feeling alive and invigorated. Classes begin at 9 a.m. on Tuesdays and Thursdays and 10 a.m. on Saturdays and Sundays.

COMPLAINT

8. Plaintiffs seek injunctive and declaratory relief that the City's ban on teaching yoga in parks and at beaches violates the California Constitution on its face and as applied. Hubbard also seeks damages and injunctive relief under Civil Code §52.1 based on citations he has been issued by park rangers for teaching yoga in a City park as well as publicly on YouTube from his home.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the claims asserted because relief is sought under Civil Code §52.1, CCP §1060, and the California Constitution.

10. This Court has personal jurisdiction over each of the Defendants because each is located in California, and the acts and omissions complained of occurred in California.

11. Venue is proper in this county because each Defendant is located in this county.

## PARTIES

12. Plaintiff Steven Hubbard is an individual residing in San Diego County.

13. Plaintiff Amy Baack is an individual now residing in Riverside County.

14. Defendant City of San Diego is a charter city in San Diego County.

15. Defendant Mayor Todd Gloria is the mayor of the City of San Diego.

16. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Doe Defendants is responsible in some manner for the acts, omissions, and damages alleged herein. Plaintiffs are unaware of the true names and capacities of the Doe Defendants, and, therefore, sue these Defendants under such fictitious names. Plaintiffs are informed and believe and thereon alleges that each of said fictitiously named Defendants was the agent, servant and employee of each and every other Defendant acting within the course and scope of his or her agency and employment, and with the knowledge, ratification and consent of each respective principal. Plaintiffs will seek leave to amend this Complaint when their true names and capacities have been ascertained.

## ALLEGATIONS OF FACT

17. Plaintiffs have offered free yoga instruction in City parks for many years. As with other community yoga classes being similarly thwarted by the City, donations may have been passively accepted and are by no means required to participate.

18. Plaintiff Amy Baack has been a yoga teacher since 2016, completing her 200-hour yoga

4

COMPLAINT

teacher training in Ocean Beach at the now-closed Elka Yoga and Wellness. Baack started teaching free donation-based yoga classes in parks around the city after her graduation as a way to practice her skills and build community. Anyone was free to attend such classes, and any donations people made afterwards were purely voluntary.

19. Baack also taught yoga and fitness full-time during this time at various studios and gyms around San Diego. In 2021, after people were allowed to gather again outdoors post-pandemic, Baack began teaching donation-based yoga at Sunset Cliffs. Since May 2021, Baack taught there consistently, every Saturday from 9-10 a.m. and Wednesday evening from 6-7 p.m. (5-6 p.m. during the winter) at the very start of the Cliffs at Sunset Cliffs Blvd. and Adair St., until May 2024 when the City began enforcing its unconstitutional ban on the teaching of yoga at all shoreline parks and beaches.

20. The vast majority of Baack's students (residents and tourists from around the world) did not choose to donate, and Baack welcomed everyone, with free mats and towels to use to join in.

21. Baack formed her own mobile yoga business Mind Body Badass, LLC in 2023. She offers custom yoga and meditation instruction for corporate wellness, events, resorts, private home sessions and more. These private classes are not generally open to the public and constitute the majority of Baack's income, along with working for local studios.

22. Baack's free public classes with optional donations gave her an opportunity to stay connected with the public of San Diego and offered a way for those who cannot afford studio or private session prices a way to still access the healing benefits of yoga.

23. Baack is also a certified meditation teacher. Meditation is a major component of Baack's yoga classes, and it is with all yoga practices. Yoga is a mental and physical practice that moves your body in a therapeutic way to mobilize, strengthen, and heal the body back to its optimal alignment. Baack also teaches the mind-body connection and how thoughts affect how people feel and what they experience.

24. Hubbard has been teaching yoga and breath-based meditation for twenty years. The main intention of yoga as taught by Hubbard is to "still the fluctuations of the mind" or "soothe the agitated mind." This is done with a specialized breathing that is the foundation of the yoga practice. This deep diaphragm breathing helps to stimulate the vagus nerve and helps to get out of a sympathetic

5

COMPLAINT

(fight or flight state) and return to a healthier parasympathetic (rest and digest) state. This breathing also helps people move through challenges that arise during the practice with an inner quality of balance. This helps to build confidence, competence and lessens overall stress response.

25. For the past 17 years, Hubbard had been offering free outdoor yoga classes to the public at Palisades South Park, off of Law Street in Pacific Beach, giving access to people who otherwise may never join a private class or learn about yoga. Hubbard has never controlled who can set down their yoga mat or where they may do so as he offered this free instruction. Participants always had the option after the class to drop off a donation in a donation box on Hubbard's front porch across the street but were by no means required to do so.

26. Plaintiffs encourage students to practice mindfulness, noticing the sound of the ocean waves, the feeling of the ground beneath them, the temperature of the breeze, and their breath as it flows in and out in sync to the movements. This brings more awareness to one's body, one's inner life and emotions, and to the experiences of others. Mindfulness also helps with focus and being in the moment. Plaintiffs teach their students to practice this by holding certain challenging poses or by taking a deep controlled breath in a resting pose, for example.

27. Yoga has been proven in numerous studies to have profound positive effects on mental illnesses like depression, anxiety, and stress. Plaintiffs also teach proper breathing awareness and mechanics, which also has positive effects on the vagus nerve and healing the sympathetic nervous system, as well as managing stress. Plaintiffs instruct students on breathing slowly through their nose and activating the full expanse of their diaphragm, instead of breathing shallowly into their chests as many people do. All yoga classes end with Savasana, a meditation, in which students lie on the ground with their eyes closed, practicing being with their breath and finding peace, a moment of stillness.

28. Something special about the free and donation-based classes Plaintiffs and other outdoor yoga instructors have taught is how inclusive they are, as they are open to the public, with no sign-ups or pre-registration to join. One could simply walk up and join a yoga class in a park. There is no intimidation like someone might feel going into a yoga studio, especially as a beginner.

29. Plaintiffs' classes are for all levels. They do not use music, so it is accessible for folks hard of hearing to hear and understand the instructions.

6

COMPLAINT

30. Many people have discovered yoga for the first time in these outdoor yoga classes, and it opens them up to a world of physical and mental health that they likely would not otherwise access.

31. Yoga is not only a mental and physical practice, but a spiritual one as well. The philosophy of yoga was developed to teach humans how to free themselves from suffering and find unity (the word yoga translates to "to unite/yolk") with the mind/body/spirit and with the universe. This ancient Indian philosophy promotes finding peace within in order to connect more with all that is around; the movement of the body was added as part of the practice in order to make it easier to find peace in the mind. The foundational yoga texts Plaintiffs and other instructors use include moral codes (called Yamas and Niyamas) that instruct yogis on how to live a better more fulfilled life, including: to be of service to others, to be free of negativity and selfishness, to be truthful, to practice gratitude and non-harm, and more. All of this makes yoga specifically more than a "fitness" activity and instead more of a philosophy.

32. These are all things Plaintiffs talk about throughout class, and during a seated introduction at the start of class, Plaintiffs will bring up an idea or philosophy for the week for students to reflect on throughout class. Then Plaintiffs will touch back on it while they are holding a pose and deep in focus, or during resting poses or in Savasana at the end.

33. In 2014, park rangers cited Hubbard for violation of SDMC §63.0102(b)(24), which requires a permit for groups of 50 or more people "to hold, conduct or participate in any celebration, parade, service, picnic exercise, or other special event in any park, plaza, or beach."

34. On February 6, 2014, a San Diego Superior Court Commissioner found Hubbard not guilty after a trial, and found §63.0102(b)(24) to be unconstitutional on its fact and as applied.

35. In 2016, the City Attorney issued a memorandum of law taking issue with the Commissioner's ruling in Hubbard's case and also opining that teaching yoga is not protected by the First Amendment, and that the City could pass a specific ban on teaching of yoga in City parks if it desired to.

36. The City's surreptitious inclusion of "teaching yoga" as a banned activity in the recently passed sidewalk vending ordinance is the ultimate manifestation of the City Attorney's longstanding desire to eliminate these outdoor classes from being offered.

7

COMPLAINT

37. Prior to the passage of this ban, during Baack's years of teaching, park rangers came by a few times. Occasionally they inquired with her, but once she explained that it was a free class open to the public, donations accepted but not required, and that we were within size limits they always said this was fine and moved on. This all changed in May 2024.

38. On Wednesday, May 8, 2024 at 5:40 p.m., Baack arrived at her usual teaching spot at Sunset Cliffs to teach my free Sunset Slow Flow class. Three park ranger trucks were parked on the cliff, barricading access to the stretch of land where Baack and her students usually gather.

39. There were three park rangers talking to a few of Baack's regular yoga students, who attend every class and look forward to this practice as one of the highlights of their stressful weeks. There were also other park rangers there, apparently as backup.

40. A photo of the park rangers parked on the cliff is below:



41. When Baack asked what was happening, the rangers informed her that a law has recently changed in San Diego that does not allow any yoga classes to occur (even for free) on any shoreline park in the area

42. The rangers did not have a copy of the law nor were they able to tell Baack what the law was. Instead they told her that if she returned, since this was her "warning," next time it would be a "criminal offense."

8

COMPLAINT

43. One of the rangers talked at Baack condescendingly for over 20 minutes, evading her questions about why no one was informed about all this or given any warning. The ranger told Baack she was an "irresponsible leader" for not knowing about this law and that it was "all over the news," so she should have known about it.

44. Since being threatened by these rangers, Baack has not taught yoga in City parks due to fear of being arrested or fined, and ultimately decided to move out of San Diego.

45. On May 17, 2024, counsel for Plaintiffs sent a cease and desist letter to the Mayor and City Attorney regarding enforcement of this unconstitutional ordinance.

46. Neither responded, but the Mayor's office then cancelled a meeting that was to take place later that week between a member of the Mayor's staff and several community members including Plaintiffs who are concerned about the ordinance. The Mayor's office said it cancelled the meeting specifically because of the letter.

47. The City actually *increased* enforcement after the letter, as it was not until after receipt of the letter that rangers began issuing citations to Hubbard.

48. Since receipt of the letter, the Mayor's office has also been sending out the following canned response to anyone who inquires about this issue:

Hello,

Thank you for contacting me and providing your input on yoga and other commercial activities in our public parks.

It is the City of San Diego's responsibility to ensure equitable and safe access to our parks, bays, and beaches for all users at all times. The City of San Diego's Municipal Code prohibits groups consisting of four or more people engaged in commercial recreational activities like yoga, fitness classes, and dog training from gathering in parks without a permit, and can only operate in certain designated areas. The applicable municipal code (SDMC 63.0102) has been in effect since 1993, and recent updates to the municipal code have clarified the activities for which necessary permitting applies and further outlines that it is unlawful to require someone to negotiate, establish, or pay a fee before providing a service, even if characterized as a donation.

These updates went into effect March 29 and are in place to ensure these public spaces remain safe and accessible to all users at all times. Park Rangers, SDPD Officers, and City Lifeguards have the authority to enforce these codes to ensure

9

COMPLAINT

public safety in San Diego's parks and beaches. Interested parties can access permit applications and information for various types of groups and activities on the Parks and Recreation Department's webpage.

Sincerely,

TODD GLORIA
Mayor
City of San Diego

49. The Mayor knows that Plaintiffs and other yoga instructors were not requiring anyone to pay a fee before participating in any of these free yoga classes being offered in City parks, and that Plaintiffs were providing such teaching and instruction for free, with donations being completely optional.

50. Yet, the Mayor continues to falsely characterize such free teaching of yoga as being a "commercial" activity and is instructing park rangers to continue to harass, intimidate, threaten, and issue citations to Plaintiffs and other yoga instructors who engage in such constitutionally protected speech in City parks.

51. On May 18, 2024 and again June 1, 2024, park rangers stopped Hubbard after he taught yoga classes in Palisades South Park where he had done so for 17 years, and wrote him infraction tickets requiring him to appear in San Diego Traffic Court for arraignment on violation of SDMC §63.0102(c)(14).

52. The ticket written on June 1, 2024 was for violation of not only §63.0102(c)(14), stating "yoga" in the ranger's written description on the ticket, but also includes §63.0102(c)(15) and states, "set up any exhibition, give lecture" as the reason written by the ranger on the ticket.

53. The only thing Hubbard was doing that led to the issuance of either of these appearance tickets was engaging in the free teaching of yoga in a City park as he had done regularly for the past 17 years.

54. On June 22, 2024, the Yoga Journal published a story about a pending federal lawsuit Plaintiffs have also filed (which does not include the state law claims at issue in the present case) and included the line, "The City of San Diego Parks and Recreation spokesperson says that one fitness teacher has already successfully acquired a permit to teach classes on the shoreline parks."

10

COMPLAINT

(https://www.yogajournal.com/teach/yoga-teachers-sue-san-diego/)

55. This was surprising to Plaintiffs, as the City had previously stated no such permits were being offered for shoreline parks. So, on June 24, 2024, Baack wrote the following email to a park ranger:

> I am inquiring about how I can get permit access to do yoga at shoreline parks. I was formerly teaching classes on a donation basis at Sunset Cliffs under the rules set forth to us previously, but my classes were recently shut down by Parks & Rec rangers. I was told there would be NO permits given for ANY shoreline parks/beaches in San Diego for fitness events. The Parks & Rec permit website also says this.

> However, an article was recently published by the Yoga Journal that contains this quote in the final paragraph:

> "The City of San Diego Parks and Recreation spokesperson says that one fitness teacher has already successfully acquired a permit to teach classes on the shoreline parks." (https://www.yogajournal.com/teach/yoga-teachers-sue-san-diego/)

> The reporter was unable to tell me who this spokesperson was or any more information about this exclusive permit.

> Could you please tell me how this individual was able to get a shoreline park permit when this is supposedly banned? How are we able to get an exception like this? I have cc'd yoga teacher Jackie Kowalik who is also interested in obtaining a shoreline parks permit. The permits department has not been able to help us.

56. The park ranger responded to Baack the same day, "Amy, I am not aware of any exceptions to the prohibition of issuing permits for fitness activities of any kind in the Shoreline Parks area. I am cc'ing Maria Villegas of the Permit Office to confirm."

57. Ms. Villegas, Permit Center Supervisor of the Parks & Recreation Department for the City, responded the same day, copying Baack on the email, "Hi Richard [the park ranger], We do not issue permits for fitness at any shoreline park. Thank you."

58. On June 29, 2024 at 9:00 a.m., Hubbard observed a members-only class conducted by Fit athletic club on Mission Beach that is advertised weekly on their schedule of classes as "Beach Yoga." The class included large loudspeakers on the sand.

59. Fit continued holding these classes regularly and uninterrupted despite the amendments

11

COMPLAINT

to SDMC §63.0102, and despite the fact that the City has a policy of not issuing permits for such activity on any beach or shoreline park.

60.    By allowing Fit to hold such classes, which are a members-only commercial activity requiring a gym membership, apparently because Fit is a large nearby business, the City demonstrated that its goal in enforcing this ordinance in the manner it is enforcing it is not to regulate commercial activity, but rather to target the free teaching of yoga in parks that would otherwise be accessible to the general public.

61.    City parks are open to the general public and constitute a public forum.

62.    Plaintiffs are engaged in pure speech, teaching yoga to anyone who wishes to listen and participate. They are not charging fees, and they are not blocking or restricting access to any public space.

63.    Several yoga gatherings by Plaintiffs and others have been shut down by City park rangers enforcing this new ordinance.

64.    Hubbard has now been written seven citations for free teaching of yoga in a City park in Pacific Beach, as well for teaching yoga from his *private backyard* and streaming the lessons online, which people in a park viewed.

65.    Baack has been threatened with citations if she keeps engaging in free teaching of yoga in a City park in Ocean Beach.

66.    Unless the Court enjoins the City from including (1) the term "yoga" within its definition of "services" in SDMC §63.0102, and (2) the act of "teaching yoga" as an exception to protected "expressive activity" in SDMC §63.0502, Plaintiffs will continue to be irreparably harmed by the violation of their rights under the California Constitution to teach free or donation-based yoga classes in a public forum.

## FIRST CAUSE OF ACTION

### Violation of Article I, Section 2 of California Constitution

67.    Plaintiffs re-allege and incorporate by reference all prior paragraphs of this Petition and Complaint as though each were set forth herein in full.

68.    SDMC §63.0102(c)(14) as now amended violates Article I, Section 2(a) of the

12

COMPLAINT

California Constitution, which provides, "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

69.     SDMC §63.0102(c)(14) bans providing of "services" without a permit, which is defined in §63.0102(b) as including "the provision of intangible items to a group of four persons or more at the same time that cannot be returned once they are provided. Examples include…yoga."

70.     One exception in §63.0102(c)(14) is, "Except *expressive activity* authorized by Chapter 6, Article 3, Division 5 of this Code." (Italics in original.)

71.     SDMC §63.0502 defines expressive activity as meaning "all forms of speech and expressive conduct," and then gives examples that include "performances" and "other items that are inherently communicative in nature and have only nominal value or purpose apart from its communication." Then there is an exception within this exception stating, "Expressive activity does not include…teaching yoga."

72.     By specifically targeting the free teaching of yoga both in the definition of "services" as well as an exception to the exception for expressive activity, the ordinance is content-based and is therefore evaluated under strict constitutional scrutiny. Thus, in order to be constitutional, the ordinance must be narrowly tailored to achieve a compelling government interest.

73.     The City does not have a compelling interest in banning the free teaching of yoga in City parks.

74.     While the City claims a permit can be obtained for engaging in such activity, in practice the City refuses to issue any permits for this activity in any City park except Mission Bay Park, Balboa Park, and Liberty Station.

75.     The City does not have a compelling interest in only granting permits for free teaching of yoga in these three areas of the City.

76.     SDMC §63.0102(c)(14) is not narrowly tailored to achieve any government interest, let alone a substantial or compelling one.

77.     This section now states in its entirety:

13

COMPLAINT

Commercial Activity and Services. Except *expressive activity* authorized by Chapter 6, Article 3, Division 5 of this Code and *sidewalk vending* authorized by Chapter 3, Article 6, Division 1, it is unlawful to carry on or conduct commercial activity, to provide any *service*, or to solicit offers to purchase, barter, or to require someone to negotiate, establish, or pay a fee before providing a *service*, even if characterized as a donation, without the written consent of the City Manager. Written consent of the City Manager includes commercial activity and *services* allowed as part of a lease, permit, or other written permission from the City.

(Italics in original.)

78.   The term "services" is defined in subsection (b), which provides:

*Services* are activities involving the performance of work for others, the rental of furniture or equipment for an activity or event, or the provision of intangible items to a group of four persons or more at the same time that cannot be returned once they are provided. Examples include massage, **yoga**, dog training, fitness classes, equipment rental, and staging for picnics, bonfires or other activities.

(Italics in original, bold/underline added.)

79.   By separating out "commercial activity" and "service" as two separate categories that are banned in subsection (c)(14), the ordinance makes clear that teaching yoga is being targeted not as a commercial activity, but as a "service" which does not need to be commercial in order to be banned. This violates Article I, Section 2 of the California Constitution.

80.   The definition of "services" makes this clear by specifically including "yoga" in subsection (b).

81.   The ordinance further makes clear that free or donation-based, non-commercial teaching of yoga is being targeted by specifically excluding "yoga" from the definition of "expressive activity."

82.   The ordinance also places unbridled discretion in the hands of the City Manager, i.e. the Mayor, to determine when and where yoga will be allowed in City parks. This violates Article I, Section 2 of the California Constitution as well.

## SECOND CAUSE OF ACTION

### Violation of Bane Act – Civil Code §52.1

83.   Plaintiffs re-allege and incorporate by reference all prior paragraphs of this Petition and Complaint as though each were set forth herein in full.

14

COMPLAINT

84. "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." (*Cornell v. City and County of San Francisco* (2017) 17 Cal. App. 5th 766, 791-792, quoting *Simmons v. Superior Court* (2016), 7 Cal. App. 5th 1113, 1125, quoting *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal. App. 4th 860, 883.

85. Plaintiff have a clearly delineated and plainly applicable right under Article I, Section 2 of the California Constitution to teach yoga in a public forum.

86. Plaintiff also have a clearly delineated and plainly applicable right under Article I, Section 7 of the California Constitution to freedom of movement to practice yoga in a public forum. This section provides, "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws."

87. Defendants detained and cited Hubbard, and thereby violated his right to be free from arrest without probable cause, with the particular purpose of depriving Plaintiff of his enjoyment of aforementioned California Constitution, Article I, Section 2 and 7 rights to freedom of speech, assembly, and movement, as well as equal protection of the laws.

88. Hubbard was harmed as a result of Defendants' actions.

89. On May 18, 2024 and again June 1, 2024, park rangers wrote infraction tickets requiring Plaintiff Hubbard to appear in San Diego Traffic Court for arraignment on violation of SDMC §63.0102(c)(14).

90. The ticket written on June 1, 2024 is for violation of not only §63.0102(c)(14), stating "yoga" in the ranger's written description on the ticket, but also includes §63.0102(c)(15) and states, "set up any exhibition, give lecture" as the reason written by the ranger on the ticket.

91. The only thing Hubbard was doing that led to the issuance of this ticket was engaging in the free teaching of yoga in a City park as he had done regularly for the past 17 years.

92. SDMC §63.0102(c)(15) provides, "Shows. Except *expressive activity* authorized by Chapter 6, Article 3, Division 5, it is unlawful to set up, maintain, or give any exhibition, show, performance, lecture, concert, place of amusement, or concert hall without the written consent of the

15

COMPLAINT

City Manager."

93. Thus, the City also considers the teaching of yoga to be a "lecture" which is unlawful by virtue of "yoga" being specifically exempted from the exceptions for "expressive activity" in the ordinance.

94. On November 9 and 10, 2024, City park rangers also wrote Hubbard citations for teaching yoga classes from the privacy of his backyard and streaming it online with his phone, which some students in a nearby park viewed.

95. Each of these citations constitute intimidation and coercion intended to thwart Hubbard's free speech rights under Article I, Section 2 of the California Constitution.

96. On November 15, 2024, Hubbard submitted a notice of claim to the City for the May 18, June 1, November 9, and November 10 tickets issued to him by park rangers. The City never responded to the notice of claim, which was therefore denied on December 30, 2024 by operation of law.

97. The City is vicariously liable for the actions of its park rangers.

98. Hubbard seeks damages for each of the above citations issued.

99. Both Plaintiffs seek injunctive relief under Civil Code §52.1.

### THIRD CAUSE OF ACTION

#### Declaratory Relief

100. Plaintiffs re-allege and incorporate by reference all prior paragraphs of this Complaint as though each were set forth herein in full.

101. There is an actual and justiciable controversy between the parties regarding whether Plaintiffs may continue teaching yoga for free or with optional donations in City parks as activity protected by Article I, Section 2 of the California Constitution.

102. A judicial declaration of the rights and obligations of the parties is necessary to ensure there are no future invasions of Plaintiffs' rights.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(1) For a preliminary and permanent injunction preventing the City or any of its agents for enforcing SDMC §63.0102(c)(14) as violating Article I, Section 2 of the California Constitution;

16

COMPLAINT

(2)     For a preliminary and permanent injunction preventing the City or any of its agents for enforcing SDMC §63.0102(c)(15) as violating Article I, Section 2 of the California Constitution;

(3)     For a preliminary and permanent injunction preventing the City or any of its agents for enforcing SDMC §63.0102(c)(14) and (c)(15) as violating Article I, Section 2 of the California Constitution as applied to teaching yoga for free or with optional, passively accepted donations in City parks;

(4)     For damages to be determined by the trier of fact, against all Defendants, for the citations issued to Hubbard on May 18, June 1, November 9, and November 10 of 2024;

(5)     For declaratory relief that teaching yoga for free or with optional donations in a public forum is protected free speech under Article I, Section 2 of the California Constitution;

(6)     For a preliminary and permanent injunction preventing the City or any of its agents from continuing to issue citations for violation of SDMC §63.0102(c)(14) based on teaching yoga classes online in a manner that may be viewed in a City park, in violation of Article I, Section 2 of the California Constitution;

(7)     For reasonable attorney's fees and costs and expenses of litigation, pursuant to Civil Code §52.1, CCP §1021.5, and any other relevant statutory or case law, against all Defendants;

(8)     For such other and further legal and equitable relief as the Court deems just and proper.

Dated: January 29, 2025                    By:    _____
                                                  Bryan W. Pease, Esq.
                                                  Attorney for Plaintiffs

17

COMPLAINT